THE AMERICAN RAILROAD COMPANY OF PORTO RICO
*v.* QUIÑONES.

APPEAL from the District Court of Mayagüez.

No. 775.—Decided June 27, 1912.

CONDEMNATION OF PRIVATE PROPERTY—INDEMNITY FOR DAMAGES.—The evidence in the case at bar having been examined, this court held that the court below committed manifest error in weighing the evidence when it held that the plaintiff suffered no damages whatever by reason of the expropriation of the land for the defendant company, and that in not granting him indemnity for the damages caused him by depriving him of his property it violated section 355 of the Civil Code and the Act on condemnation of private property, approved March 12, 1908.

ID.—COMPENSATION FOR DAMAGES—BENEFITS RESULTING FROM CONSTRUCTION OF RAILROAD.—The owner of land of which a strip is expropriated cannot be considered as compensated for the damages caused in depriving him of the property by the benefits which may result to him from the increase in the value of his lands caused by the laying of railroad tracks through the same, for such benefits never accrue exclusively to him but are common to all the land-owners of the district where the estate is located.

The facts are stated in the opinion.

*Mr. Benito Forés* for appellant.

*Messrs. Fernando Vázquez* and *N. B. K. Pettingill* for respondent.

MR. CHIEF JUSTICE HERNÁNDEZ delivered the opinion of the court.

In proceedings instituted in the District Court for the Judicial District of Mayagüez by The American Railroad Company of Porto Rico against José Vicente Quiñones for the

expropriation of a strip of land containing 2,844.40 square meters required for the purpose of laying a branch of the railway line which said company operates between the cities of San Juan and Ponce, which branch was to be devoted to the public service from a point on the main line between the San Germán and Hormigueros stations, easterly, to another point at or near the bank of the Estero River of the town of Sabana. Grande, this Supreme Court, upon hearing the appeal taken by the defendant from the judgment of the trial court dated August 10, 1910, decided the same by judgment of March 10, 1911, affirming the judgment appealed in so far as it declared the strip of land in question expropriated from the defendant and reversing the same in so far as it states that the defendant shall receive from the plaintiff the sum of $75 only, since such pronouncement should be understood to read as follows:

"It is held, decreed, and ordered, moreover, that the plaintiff, The American Railroad Company of Porto Rico, shall pay to the defendant, Vicente Quiñoñes, the sum of $75, which is the price specified in the complaint for the aforesaid strip of land, to which price the court must be held, and such other sum of money as the court may specify as just compensation for damages suffered by the defendant as a result of such expropriation, after taking evidence at a future session in accordance with law, without imposition of costs."

In accordance with the foregoing judgment the parties were heard for the purpose of determining the sum of money which the defendant should receive as just compensation for damages suffered by him as a result of the expropriation, and both parties introduced documentary and oral evidence, the court, moreover, having made a personal inspection of the land.

After weighing all the evidence the court reached the following conclusions, which we transcribe below:

"That due to the fact that the railroad traverses lands which pertained to the estate of the defendant, Quiñones, he was not prevented

from continuing to grind at his factory if he so desired; that the machinery of said factory is for the manufacture of *muscavado* sugar, of a system quite antiquated, and that in the year 1881, when said factory was established, it was already in use; that if the machinery is in the bad condition in which it is found because of lack of use since the railroad tracks were laid there, the plaintiff can in no wise be held responsible therefor, the grinding or not of canes at such factory depending on the will of the defendant and of his *colonos;* that the *colonos* who formerly ground their canes there now do so, in furtherance of their interests, at the Guánica Central, availing themselves of the advantages offered by the existing branch of the railroad; that from this free determination of the *colonos* no liability against the plaintiff and in favor of the defendant, Quiñones, can be derived; that, on the contrary, if Quiñones had placed his factory *up to date* with the transportation facilities offered by the branch of the railroad the number of his *colonos,* and, consequently, his profits would surely have increased greatly.

"From the defendant's evidence itself it appears that the lands referred to have increased in value. The witness for the defense, Pedro Viadé, testified at the trial:

" 'That the branch of the railroad divides the defendant's property into two portions, and that the smallest thereof (the stated strip) contains 2 *cuerdas,* approximately, and has a value of $300, at the rate of $150 a *cuerda.'*

"In accordance with the aforesaid data, and figuring the land expropriated at 1 *cuerda,* the estate being comprised of 9, the 8 remaining *cuerdas*—or, that is, the present estate—has a value of $1,200, or of $900 .or $1,000 at least, if we consider that there may exist therein lands of inferior class.

"The evidence of the defendant, Quiñones, tends to prove that the lands before the expropriation had a value of from $900 to $1,000.

"The court is convinced that the parcel of 2 *cuerdas* (the strip) can all be planted to cane if it is so desired."

In view of the conclusions transcribed the District Court of Mayagüez rendered judgment on August 29, 1911, holding that the defendant, José Vicente Quiñones, has not suffered damages of any kind and, consequently, that said defendant shall recover no damages from the plaintiff company, and did

not specially tax costs.  This is the judgment appealed to this Supreme Court by Quiñones.

The appellant alleges that the judgment appealed is contrary to law and should be reversed for the following reasons:

"(*a*)  Because upon rendition thereof the judge committed a manifest error and demonstrated marked passion and partiality in weighing the evidence.

"(*b*)  Because it violates the doctrine of just and reasonable indemnity that should be allowed to all owners deprived of property, as provided by section 355 of the Civil Code.

"(*c*)  Because it fails to conform and comply with the judgment of this Supreme Court dated March 10, 1911.

"(*d*)  Because, besides violating the provisions of the law of Eminent Domain, it disregards the law of police of railroads in this Island."

With respect to the first ground of the appeal we are of the opinion that the conclusions of fact reached by the lower court in rendering the judgment appealed from do not support such judgment, if considered in connection with the result of all the evidence taken at the trial.

We have examined the evidence and it shows that the strip of land expropriated from Quiñones is level and the best land of his estate; that the branch of the railroad of the American Railroad Company of Porto Rico traversing said estate, which is composed of some 9 *cuerdas,* divides the same into two portions, one of 2 *cuerdas* on one side and another of 7 on the other side of the spur; that cultivation at the end of one of the small parcels, due to the narrowness to which it is reduced by the laying of the branch track, is difficult but not impossible; that crops planted on the land on either side of the track would be in danger of fire caused by sparks from the railroad locomotives, Quiñones, therefore, being prevented from erecting wooden buildings or of placing combustible matter in that immediate vicinity, and that the railroad runs at a

distance of 19 or 20 meters from the house and factory build-
ings, causing the inconveniences, for not all are advantages,
consequent to the proximity of a railroad.

These facts convince us that Quiñones has suffered dam-
ages by being deprived of the parcel of land expropriated.

Such damages can be fixed at $300, and for such estimate
grounds are furnished us by the testimony of witnesses Juan
Quiñones Mayoral, who places them at $300 or $400, and of
Jaime Montalvo, who agrees with him.

The plaintiff itself confirms our estimate, since in para-
graph 9 of the complaint thereof it alleges:

"That the value of the property it is desired to expropriate is $75;
that the court at the first trial fixed the value of said parcel of land
and all damages suffered by the defendant at $300, and that the
petitioner has now on deposit, at the disposal of this honorable court,
the sum of $300—that is, $375—and also a bond in the sum of $5,000
to cover the value of said lands and any damages that the defendant
may suffer."

Quiñones cannot be deemed indemnified for damages by
the benefits that even through the increased value of his lands
by virtue of the branch in question may have resulted to him,
since such benefits will never pertain to him exclusively but
will be common to all the proprietors of the district wherein
he lives.

We are of the opinion that the judge committed manifest
error in weighing the evidence when he deemed that José
Vicente Quiñones had not suffered damages of any kind, and
that in not granting to Quiñones an indemnity for the damages
caused by the expropriation of his property he violated sec-
tion 355 of the Civil Code and the Law of Eminent Domain,
approved March 12, 1908.

The judgment appealed from should be reversed and The
American Railroad Company of Porto Rico should indem-
nify José Vicente Quiñones in the sum of $300 for damages

suffered by reason of the expropriation of the parcel of land of which he has been deprived, each party to pay its own costs.

*Reversed.*

Justices MacLeary, Wolf, del Toro and Aldrey concurred.